BRENARD MANUFACTURING COMPANY *v.* PATE.

Opinion delivered October 29, 1928.

*O. A. Featherston,* for appellant.

*Pinnix & Pinnix,* for appellee.

SMITH, J. Appellant brought suit in the Pike Circuit Court against appellees, on a contract for the sale of a radio outfit and certain accessories amounting to $305.

Appellees answered, and alleged that, under the contract sued on, they had executed to appellant's order five notes for the sum of $55 each and a sixth note for $30. That on November 30, 1925, the Security Finance Company brought suit on four of the $55 notes, as the owner thereof, in the court of a justice of the peace of Pike County, alleging that it was the owner of said notes, and that the same were unpaid. Appellees answered in the justice court, and alleged that the execution of the notes sued on had been procured by fraud, and that there was no consideration for them. The issue joined was heard by the justice of the peace, who, on November 30, rendered judgment in favor of the defendants. From this judgment of the justice of the peace an appeal was duly prosecuted to the circuit court

of Pike County. It was further alleged and shown that on January 20, 1926, the Security Finance Company brought suit on the fifth note for $55 and the $30 note, before another justice of the peace of the county, and that the same defense was interposed by the defendants, and on the trial before the justice of the peace a judgment was rendered in favor of the defendants. From this judgment of the justice of the peace an appeal was duly prosecuted to the circuit court of Pike County.

At the ensuing term of the circuit court the plaintiff, Security Finance Company, took a nonsuit in each of these appeal cases, and they were dismissed at plaintiff's cost.

The authority of the Security Finance Company to sue on the notes in the courts of the justices of the peace is not questioned, and, the identity of the present case with that of the two suits before the justices being shown, the judge directed the jury to return a verdict for appellees, on the theory that the justices' judgments were a bar to the present suit, and the correctness of this ruling is the question presented by this appeal.

For the reversal of the judgment of the court below it is insisted that, after the appeal to the circuit court, the suits of the Security Finance Company had the same status as if originally begun in that court, and inasmuch as the statute (§ 1261, C. & M. Digest) gives the plaintiff the right to dismiss his action without prejudice to a future action "before the final submission of the case to the jury or to the court," the right existed, before the submission of the justice appeals to the court or jury, to dismiss those cases without prejudice to a future action.

We do not concur in this view, for the reason it does not give proper effect to the judgments of the justices of the peace. The justice courts had jurisdiction of the causes brought in them, and judgments were rendered which adjudicated the rights of the parties, and these judgments were effective and valid until they were set aside in some manner provided by law.

It is true that, on appeal from the judgment of a justice of the peace to the circuit court, the cause is tried *de novo;* but it is true also that the nonsuits taken in the circuit court amounted to dismissals of the appeals, and, when that was done, the judgments of the justices of the peace were left in force as if no appeals had been taken.

The case of *Burgess* v. *Poole,* 45 Ark. 373, rules this. There Burgess and Poole had separate mortgages upon a crop of cotton produced by Williams, who brought replevin before a justice of the peace against Burgess for four bales of the cotton. Poole, on his own application, was admitted as a party to the suit, and, judgment having been given for Burgess, Poole appealed to the circuit court. Subsequently, and before any disposition had been made of this appeal, Poole instituted suit in replevin against Burgess before another justice of the peace for the identical cotton. This last-mentioned action also found its way into the circuit court by appeal, and was there determined in favor of Poole. The opinion recites that it was not shown what had become of the first appeal, but that it had probably been dismissed, either upon Poole's own motion or for want of prosecution, before the trial in the second appeal. It was said:

"If this be so, the obvious effect was to leave the judgment of the justice of the peace in full force, the same as if no appeal had been taken." It was there further said: "But, whether dismissed or not, the judgment of the justice of the peace stands until it is set aside by a superior court. The grant of an appeal did not impair it. Nor did it revive Poole's original cause of action, which had been destroyed by merger, so as to enable him to maintain an independent suit upon it. Burgess, if sued again for the same matter, during the pendency of the appeal, might plead the former judgment in bar. (Citing cases). It was an issue in the present action that the matter in controversy was *res judicata.* Burgess filed in the circuit court a plea of former suit pending between the same parties and in-

volving the same subject-matter, and on the trial he read in evidence the docket entries of the justice in the first action, showing the facts above recited.

"If Poole had kept aloof from the litigation between Williams and Burgess, he would not have been concluded by any judgment therein. Being a stranger to the proceeding, he might have sued out his writ of replevin for the same property without waiting for the determination of that suit. *Hagan* v. *Deuell*, 24 Ark. 216. But, having voluntarily come in, he is bound by the result, as much as if he had been an original party."

It is true the instant case was not brought until after the nonsuit had been taken in the circuit court, but, as was said in *Burgess* v. *Poole, supra,* "the obvious effect (of a nonsuit) was to leave the judgment of the justice of the peace in full force, the same as if no appeal had been taken." There was therefore, at the time the instant case was begun, two outstanding judgments of the justices of the peace adjudicating that the notes which formed the consideration for the contract sued on were without consideration.

In the case of *Denver & R. G. R. Co.* v. *Paonia Ditch Co.,* 49 Colo. 281, 112 Pac. 692, the facts were that a judgment was rendered in favor of the defendant railway company in a suit against it by the plaintiff ditch company. On the appeal to the circuit court, the ditch company was granted leave to dismiss its action without prejudice. It was contended that this right existed under the section of the Code of Civil Procedure of the State of Colorado, where the action originated, similar to § 1261, C. & M. Digest, which gives to the plaintiff the right to dismiss his action at any time before trial, upon payment of costs, if a counterclaim had not been made. No counterclaim had been made in that case, but there had been, as was pointed out by the Supreme Court of Colorado, a trial of the action in the county court, and it was held by the court that the statutes of that State giving the plaintiff the right to take a nonsuit did not give the plaintiff against whom a judgment had been rendered

in the lower court, as the result of a trial there, the right to dismiss his action without prejudice, after he had appealed to the district or superior court. It was there said:

"The spirit of the Code provision, as applicable to the facts of this case, is that the plaintiff may, as matter of right, before trial in the county court, dismiss his action upon payment of costs, if no counterclaim has been made; but an unsuccessful plaintiff is not thereby authorized, after failing in the county court, to appeal to the district court, and, before trial there, dismiss his action without prejudice, over the objection of the successful defendant. The perfecting of an appeal to the district court from a judgment rendered by the county court does not vacate that judgment. It merely suspends its execution till the district court otherwise orders. The action of the district court here is equivalent to an investiture in a litigant of the power in the appellate court to vacate a judgment rendered against him in the court of original jurisdiction, without a trial on the merits, which, in a case like this, resides only in the district court itself."

In so holding it was pointed out that it was to the interest of the State that there be an end to litigation, and that, if the ruling of the district court was sanctioned, it would tend unjustly to prolong litigation and put unrestricted power in the hands of one litigant to harass and annoy another.

We conclude therefore that the court below was correct in holding that the judgments of the justice courts were *res judicata* of the causes of action sued on, and the judgment dismissing the second suit in the circuit court on the same cause of action is therefore affirmed.